UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROCHESTER-GENESEE REGIONAL
TRANSPORTATION AUTHORITY,

                                                               Plaintiff,

                                                                DECISION AND ORDER

                                                                07-CV-6378L

          v.

BRIGID HYNES-CHERIN, as
Regional Administrator for Region II of
the Federal Transit Administration,

                                                                 Defendant,


UNITED FOOD AND COMMERCIAL WORKERS
DISTRICT LOCAL ONE,
LAIDLAW TRANSIT, INC.
doing business as
Laidlaw Education Services,

                                                                Intervenors.
_____

       The matter before the Court is plaintiff's motion to stay the July 30, 2007 decision of the Federal Transit Administration ("FTA") which ordered plaintiff Rochester-Genesee Regional Transportation Authority ("RGRTA") and its subsidiary, Regional Transit Service ("RTS") from continuing to provide school bus services on certain routes in the City of Rochester. The FTA determined that the routes at issue–specifically, those with route numbers over 200–were "prohibited

school bus operations" that impermissibly competed with private-sector school bus operators. Dkt. #7 Ex. A at 11. *See* 49 U.S.C. § 5323(f)(1) (providing that federal financial assistance to public transportation providers may be used "only if the applicant agrees not to provide schoolbus transportation that exclusively transports students and school personnel in competition with a private schoolbus operator"). The FTA therefore ordered RGRTA to "cease and desist and not reinstitute such service prior to the commencement of the fall 2007 academic year," and barred RGRTA from receiving federal transit assistance funds in an amount "not to exceed the amount [RGRTA] has received in subsidy for school bus operations in the 2006 school year," less RGRTA's costs incurred in operating those services. Dkt. #7 Ex. A at 11.

RGRTA has appealed that decision to this Court pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and now seeks to stay the FTA's decision pending judicial review. The motion for a stay is granted, but only in part.

The matter was first brought to this Court's attention when plaintiff filed its complaint and motion for a stay on August 2 and August 8, 2007, respectively. Because the school year commences on September 6, 2007, this Court set a very expedited briefing and argument schedule. Since the complaint was filed, the Court has received numerous pleadings and legal memoranda both by plaintiff, the FTA and intervenors Laidlaw Transit, Inc. and the union representing employees of Laidlaw ("Union"). Much legal energy has been expended on the issues before the Court.

Although I am not convinced that plaintiff is entitled to a permanent stay while this appeal is litigated, I do believe that a brief stay is warranted to avoid the potential chaos and disruption in the transportation of students that could ensue should the FTA's decision be given immediate effect.

A brief stay is necessary to avoid that potential harm to students, their parents and other members of the public that rely on or are affected by the bus transportation in question.

At this point, the most important concern for the Court is the effective and orderly transportation of students to and from school. Thousands of students utilize bus service, and they and their families need to know *immediately* all of the details of the bus service. For last year's entire school year, RTS provided school bus service throughout the city. The Rochester City School District ("RCSD" or "the District") changed its start times and RTS was able to accommodate that. Students, parents, employers and school administrators have come to rely on that service. It appears that such service is prohibited and must come to an end, as implemented, but I believe that under the circumstances now presented to the Court, it would be disruptive and dangerous to precipitously eliminate the bus service currently in place.

The respective lawyers have urged the Court to consider the rights of their clients, the RGRTA, Laidlaw and the RCSD. My primary concern now, though, is with the students who, as of today, have no idea what bus will transport them to school, at what times and from what locations. It is unfortunate that both this Court and the students have been put in that position. There has been a bit of an ostrich-like mentality here. In January the FTA issued its first decision prohibiting plaintiff from providing school bus service. Throughout the spring, that matter was relitigated, which ultimately led to the FTA's July 30, 2007 decision reaffirming its earlier one. That decision, though, did not come out of the blue. It was foreshadowed by the January decision, and it was certainly incumbent on all concerned to prepare contingencies to allow for the seamless transportation of students commencing September 6, 2007. That apparently has not yet occurred.

At oral argument on the motion for a stay, on August 27, 2007, it was evident that Laidlaw could service *some* of the schools and routes in question, but not at the times requested by the District and not as to all schools. In fact, the attorney for Laidlaw conceded that there had been virtually no communication with the District concerning certain schools, and Laidlaw conceded that it could not provide any service at this point to one of the schools, The School of the Arts. Under these circumstances, I do not feel confident that Laidlaw could immediately step in, on less than a week's notice, to take over all of the necessary routes and to safely and efficiently transport all of the affected students to their designated schools.

Section 705 of the APA specifically provides that "to the extent necessary to prevent irreparable injury," a reviewing court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." I believe, as the situation now presents itself, that the students, their parents, and others involved will suffer irreparable harm if the Court sanctions the immediate termination of the RGRTA school bus service. I do not believe that the rights of RGRTA or Laidlaw will be dramatically affected by a modest stay, until October 1, 2007, principally to allow the RCSD to provide alternative bus service, through Laidlaw or some other provider, or to work with the FTA and RGRTA to design appropriate so-called "tripper service," which is permitted under the relevant FTA regulations. *See* 49 C.F.R. §§ 605.3(b), 605.13. I believe that the interests of the students must trump any other interest at stake here, and I believe that should the Court deny the stay, there is the likelihood for much confusion, delay and perhaps even a complete failure to provide bus service to students who are entitled to receive it.

Make no mistake though. This stay is granted strictly to prevent irreparable harm to the students, their parents and others who rely on the bus service. Were it not for that concern, I believe plaintiff would not be entitled to a stay while this matter is being litigated. The standards for granting such relief are onerous, and plaintiff has failed to meet those tests. Plaintiff needs to overcome many hurdles to be entitled to a stay, and the proof is lacking to make the findings that are necessary before the Court may grant such a stay.

## DISCUSSION

As indicated above, Congress has provided that recipients of federal funds for public transportation, such as RGRTA, may not use those funds to engage in "schoolbus transportation." *See* 49 U.S.C. §§ 5302(a)(10) ("The term 'public transportation' ... does not include schoolbus ... transportation"), 5323(f)(1) (applicant for public-transportation financial assistance must "agree[] not to provide schoolbus transportation ..."). In sum, Congress determined that federally subsidized bus companies must not compete with school bus operations. To some extent that clear Congressional mandate was reaffirmed in 2005 when Congress strengthened the FTA's powers to impose penalties for school bus violations. The Conference Report to the amendment of § 5323(f) states that Congress sought "more effective enforcement of schoolbus transportation violations" when "public transportation agencies violate the narrowly defined conditions under which public transportation providers can provide school bus transportation." H.R. Conf. Rep. 109-203 (July 28, 2005) at 952, 954.

Regulations promulgated by the FTA to implement these statutory directives have carved out an exception from the prohibition on school bus service for what is known an "tripper service." *See* 49 C.F.R. § 605.13 ("The prohibition against the use of buses, facilities and equipment funded under the Acts shall not apply to tripper service"). "Tripper service" is defined as

> regularly scheduled mass transportation service which is open to the public, and which is designed or modified to accommodate the needs of school students and personnel, using various fare collections or subsidy systems. Buses used in tripper service must be clearly marked as open to the public and may not carry designations such as "school bus" or "school special." These buses may stop only at a grantee or operator's regular service stop. All routes traveled by tripper buses must be within a grantee's or operator's regular route service as indicated in their published route schedules.

49 C.F.R. § 605.3.

What constitutes "tripper service" is at the heart of the dispute here. Both before the FTA and in this Court, RGRTA has asserted that the routes in question here are not prohibited school bus operations, but that they fall within the definition of "tripper service." The FTA rejected that assertion in both its January and July, 2007 decisions.

> Tripper service, as its definition states, is mass transportation which is designed to meet students' needs; it is not designed for school children and then given the label or some incidia of public transportation. The school service in question is not designed to be generally available to the public. The routes are specifically designed for school children and only incidentally serve members of the general public.

Dkt. #7 Ex. A at 8. *See also* 70 Fed. Reg. 4081, 4082 (Jan. 28, 2005) (statement by FTA, in context of withdrawal of proposed rulemaking amending definition of "tripper service" on ground that no clarification of that term was necessary, that "tripper service is intended to make ordinary transit bus service available to school children; it is not intended to substitute for school bus transportation").

The United States Supreme Court has instructed that "[a]n agency's interpretation of the meaning of its own regulations is entitled to deference 'unless plainly erroneous or inconsistent with the regulation.'" *National Ass'n of Home Builders v. Defenders of Wildlife*, ___ U.S. ___, 127 S.Ct. 2518, 2537-38 (2007) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). *See also Riverkeeper, Inc. v. U.S. E.P.A.*, 475 F.3d 83, 117 (2$^d$ Cir. 2007) ("An agency's interpretation of its own ... regulation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation") (quoting *Fowlkes v. Adamec*, 432 F.3d 90, 97 (2$^d$ Cir. 2005)).

In addition, the APA provides that a reviewing court shall set aside agency action, findings and conclusions only if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... ." 5 U.S.C. § 706(2). *See, e.g., Fox Television Stations, Inc. v. Federal Communications Com'n*, 489 F.3d 444, 454-55 (2$^d$ Cir. 2007). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Applying these standards here, it does not appear that the FTA's interpretation of the relevant regulations could fairly be described as "plainly erroneous" or "inconsistent with" those regulations. The FTA's interpretation is therefore entitled to deference by this Court.

That is particularly so because the regulations are not entirely clear in some respects. It is not obvious, for example, exactly what constitutes service that is "designed or modified to accommodate" school students' needs, or what is meant by the provision that tripper routes must be "within a grantee's or operator's regular route service ... ." On their face, those provisions could

reasonably be subject to a number of interpretations of varying breadth, which could determine whether the routes at issue here are prohibited or not. Given that fact, the Court must give considerable deference to the FTA's interpretation of these provisions. *Cf. Riverkeeper*, 475 F.3d at 117 ("Deference to agency interpretations is not in order if the rule's meaning is clear on its face") (quoting *Pfizer, Inc. v. Heckler*, 735 F.2d 1502, 1509 (D.C. Cir. 1984)).

Nor does it appear that the FTA's decision was arbitrary and capricious. "Agency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Riverkeeper*, 475 F.3d at 117 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). It appears from the FTA's decision that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Riverkeeper*, 475 F.3d at 117 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

RGRTA's burden is made all the more onerous by the fact that it is seeking a stay of an agency order. The longstanding rule in this circuit is that, in considering a motion to stay an administrative agency's order, the court should consider: (1) whether the plaintiff is likely to prevail on the merits of its appeal; (2) irreparable harm to the plaintiff in the absence of a stay; (3) the potential for substantial harm to other interested persons; and (4) the public interest. *Eastern Air Lines, Inc v. Civil Aeronautics Board*, 261 F.2d 830, 830 (2$^d$ Cir. 1958); *accord Mohammed v. Reno*, 309 F.3d 95, 100 (2$^d$ Cir. 2002) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *Lopez Torres*

*v. N.Y.S. Bd. of Elections*, 462 F.3d 161, 207 (2$^d$ Cir. 2006) (applying same factors in considering motion for stay pending appeal from district court); *see also Weng v. United States Att'y Gen'l*, 287 F.3d 1335, 1338 n. 5 (11th Cir. 2002) (explaining that standards for staying the action of an administrative agency "are the same standards courts have used when evaluating motions for stays pending an appeal"). "This formulation differs from the familiar test applicable to preliminary injunctions involving purely private parties primarily in that it addresses consideration of the public interest in addition to the usual standards." *Mobil Oil Corp. v. Department of Energy*, No. 79 Civ. 4105, 1979 WL 1022, at *9 (S.D.N.Y. Aug. 22, 1979) (footnote omitted).

The burden in such actions is on the party seeking the stay. *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006); *In re Albicocco*, No. 06-CV-3409, 2006 WL 2620464, at *1 (E.D.N.Y. Sept. 13, 2006). That burden has been described as "difficult" and "heavy." *See United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2$^d$ Cir. 1995) ("A party seeking a stay of a lower court's order bears a difficult burden"); *In re Adelphia Communications Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005) ("A party seeking a stay pending appeal carries a heavy burden").

For the reasons already stated, I do not find that RGRTA is likely to prevail on the merits here, to warrant the granting of a permanent stay. I see little basis at this point upon which the Court could set aside the FTA's decision.

I am also not convinced that RGRTA has demonstrated that it will be irreparably harmed in the absence of a stay. If the FTA's decision were ultimately overturned, RGRTA could presumably receive retroactively any funds that have been denied it pursuant to the FTA's order. In addition,

- 9 -

although RGRTA recites a number of other harms that it would allegedly suffer in the absence of a stay, *see* Dkt. #6-2 at 12-13, I am not convinced that plaintiff has shown the type of "damage to the [plaintiff's] business as a whole (as opposed to a temporary or partial disruption)" that must be shown in order to establish irreparable harm. *GPA Inc. v. Liggett Group, Inc.*, 862 F.Supp. 1062, 1068 (S.D.N.Y. 1994) (noting also that the threatened "damage must be immediate"); *accord RxUSA Wholesale, Inc. v. Department of H.H.S.*, 467 F.Supp.2d 285, 301 (E.D.N.Y. 2006).

With respect to the potential for substantial harm to other interested persons, Laidlaw contends that it and its drivers would be irreparably harmed if the Court were to grant a stay. *See* Dkt. #25 at 8-10. Laidlaw also notes that unlike RGRTA, which if it prevails could obtain retroactive funding, Laidlaw would have no adequate remedy at law for any losses it suffers as a result of a stay.

While those arguments are not unreasonable, the potential harm to Laidlaw or its drivers is not my principal focus here. Rather, I believe that the most important factor, given the particular facts and surrounding circumstances of this case, is the public interest, and particularly the potential harm to the public should the Court deny a stay outright. Although Laidlaw contends that it stands ready to step in and begin providing school bus service on the routes in question when the school year begins next week, Laidlaw admits that it could not do so with respect to some routes unless the District changed the "bell times" for the schools served by those routes. Laidlaw further concedes that in no event could it begin providing immediate service for students at the School of the Arts. In addition, even as to the routes that Laidlaw claims it could service, with no "bell time" changes required, the Court is reluctant simply to take Laidlaw at its word, on the eve of the new school year.

If Laidlaw's self-assured predictions were to prove unrealistically sanguine, it would be the schoolchildren of Rochester and their parents who would suffer as a result of Laidlaw's overconfidence.

The Second Circuit has "treated [the] criteria [for issuing a stay] somewhat like a sliding scale," *Thapa v. Gonzales*, 460 F.3d 323, 334 (2$^d$ Cir. 2006), so that "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed*, 309 F.3d at 101 (quoting *Metropolitan Area Transit Com'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). "Simply stated, more of one excuses less of the other." *Id.* (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

Although RGRTA has failed to demonstrate that it is likely to succeed on the merits of its claims, then, and despite the weakness of its showing that it will suffer irreparable harm in the event that a stay is denied, those factors are of relatively little importance in the case before me, given the imminent threat of significant harm to the public in the absence of a stay. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 623 (5th Cir. 1985) ("We believe that the district court has correctly identified the public interest as the central issue in this case. The irreparable harm asserted is the adverse impact that the overcharges would have on the public").

The chaos and confusion in families of school-age children that could result without at least a brief stay here are all too easily imagined. It is also not hard to envision the ripple effect of such disruptions in school bus service, since many parents could be forced at virtually, if not literally, the

last minute to alter their own work schedules and to seek alternative transportation for their children to and from school, with concomitant effects on their employers, other family members, and so on.

I believe that these circumstances present precisely the kind of "irreparable injury" that § 705 of the APA was intended to give courts the power to prevent. Postponing the effective date of the FTA's action will enable the parties and the District to take the steps necessary to provide for reliable school bus service for Rochester students, while still giving effect to the FTA's ruling implementing Congress's prohibition on the operation of school bus services by federally subsidized public transportation providers. In addition, any harm to Laidlaw or its drivers occasioned by this relatively brief delay will be minimal, particular since Laidlaw has not been providing service to the schools in question for over a year now. Most importantly, the Court's ruling will avoid the significant harm to the public that could easily ensue if the FTA's order were to take immediate effect. *See Territorial Court of the Virgin Islands*, 674 F.Supp. 180, 180 (D.V.I. 1987) (staying enforcement pending appeal of subpoena duces tecum despite "see[ing] little likelihood of success on appeal," where "the public interest weighs heavily in favor of granting the stay"); *cf. California Independent System Operator Corp. v. Reliant Energy Services, Inc.*, 181 F.Supp.2d 1111, 1121-22 (E.D.Cal. 2001) (stating that "[a]bsent the extreme exigencies of the California power crisis, the court agrees that a stay pending further action by the FERC would be proper, if not routine," but that because "a stay of this entire action may [cause] imminent and irreparable harm to the people of California," defendant's motion to stay the action in its entirety would be denied).

**CONCLUSION**

Plaintiff's motion (Dkt. #6) for an immediate stay of the decision of the Federal Transit Administration ("FTA") dated July 30, 2007, pending judicial review of that decision by this Court, is granted in part and denied in part. Absent agreement or further order of the Court, the effective date of the FTA's order is stayed until October 1, 2007.

In all other respects, plaintiff's motion is denied.[1]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 28, 2007.

---

[1] The Court session scheduled for August 29, 2007 is cancelled.